J. Mark Moore (SBN 180473) mark@spiromoss.com
Spiro Moss Barness LLP
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Tel.: (310) 235-2468; Fax: (310) 235-2456

Douglas A. Linde (SBN 217584) dal@lindelaw.net
Chant Yedalian (SBN 222325) cy@lindelaw.net
The Linde Law Firm
900 Sunset Blvd., Suite 1025
Los Angeles, CA 90069
Tel.: (310) 203-9333; Fax: (310) 203-9233

Eric A. Grover (SBN 136080) eagrover@kellergrover.com
Denise L. Díaz (SBN 159516) ddiaz@kellergrover.com
KELLER GROVER LLP
425 Second Street, Suite 500
San Francisco, CA 94107
Tel.: (415) 543-1305; Fax: (415) 543-7861

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICK J. MCGEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC., and DOES 1-10,<br><br>Defendants.<br>_____<br>AMBER TOLLEY-MCNERNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC.<br>_____ | Case No. C06-7496 CRB<br>Consolidated Case No. C07-4503 CRB<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 9, 2009<br>Time: 10:00 a.m.<br>Ctrm: 8<br>Judge: Hon. Charles R. Breyer<br><br><br>Complaint filed: December 6, 2006 |

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**PLEASE TAKE NOTICE** that on January 9, 2009 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Charles R. Breyer, in Courtroom 8 on the 19th Floor of the United States District Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Patrick J. McGee and Amber Tolley-McNerney ("Plaintiffs") will and hereby do move for final approval of the class action settlement (the "Settlement") reached between Plaintiffs and Defendant Ross Stores, Inc. ("Defendant").  Specifically, Plaintiffs move for an order:

1) confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2) finding that the Settlement is fair, reasonable and adequate;

3) finally approving the Settlement;

4) finding that proper Notice of the Settlement was given;

5) directing distribution of settlement benefits as agreed in the Settlement;

6) dismissing Plaintiffs's claims with prejudice;

7) binding class members who did not timely exclude themselves from the Settlement to the release of claims in favor of Defendant as set forth in the Settlement;

8) barring class members who did not timely object to the Settlement or exclude themselves from the Settlement from prosecuting or pursuing any appeal of the Court's order (to the extent permitted by law);

9) direct that the clerk of the Court enter the Court's order as a final judgment; and

10) without affecting the finality of the final judgment, reserve continuing jurisdiction over the parties for the purposes of implementing, enforcing and/or administering the Settlement.

Plaintiffs' motion is based on this Notice; the Stipulation of Settlement and Release Between Plaintiff and Defendant (attached as Exhibit 1 to the Declaration of J. Mark Moore filed herewith); the attached Memorandum of Points and Authorities; the Court's August 11, 2008 order granting preliminary approval, the concurrently-filed Declarations of J. Mark Moore, Douglas A. Linde, Chant Yedalian, Eric A. Grover, Patrick J. McGee and Amber Tolley-McNerney filed concurrently herewith; all other papers on file in this action; and on any oral argument or other matters the Court may take into

consideration when ruling on the motion.

Respectfully submitted,

Dated: December 12, 2008

SPIRO MOSS BARNESS LLP
THE LINDE LAW FIRM
KELLER GROVER, LLP

By: /s/ J. Mark Moore
J. Mark Moore
Attorneys for Plaintiffs Patrick J. McGee and Amber Tolley-McNerney and the proposed Settlement Class

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................

II.  BACKGROUND OF THE LITIGATION AND SETTLEMENT ....................... 1

    A.   Plaintiffs's Claims and the Parties' Pre-Settlement Litigation ............. 1

    B.   Settlement Is Reached ................................................ 2

    C.   Summary Of Settlement Terms ....................................... 3

    D.   Preliminary Approval, Notice, Objections & Claims .................... 6

III. THE SETTLEMENT MERITS FINAL APPROVAL ............................... 7

    A.   The Court Has Already Found that Plaintiffs's Claims
        Merit Class Certification For Settlement Purposes ...................... 8

    B.   Strong Judicial Policy Favors Preliminary Approval Here ................ 8

    C.   The Settlement is Fair, Reasonable and Adequate ...................... 9

IV.  CONCLUSION ................................................................. 14

# TABLE OF AUTHORITIES

FEDERAL CASES

*Armstrong v. Board of School Directors of the City of Milwaukee*,
    (6th Cir. 1980) 616 F.2d 305, 314 ............................................................ 7

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304, 1314, n.l6 (3d Cir. 1993) ...................................................... 8

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268, 1276 (9th Cir. 1992) ......................................................... 8

*Craft v. County of San Bernardino*,
    2008 WL 916965, *8 (C.D. Cal. 2008) .................................................... 13

*Cotton v. Hinton*,
    559 F.2d 1326, 1330 (5th Cir. 1977) ......................................................... 9

*Hanlon v. Chrysler Corp.*,
    (9th Cir. 1998) 150 F.3d 1011, 1022 ......................................................... 7

*In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768, 785 (3d Cir.), *cert. denied,* 516 U.S. 824 (1995) ................. 9

*In re Heritage Bond Litigation,,*
    2005 WL 1594403, *27-28 (C.D. Cal. 2005) ............................................ 9

*In re Omnivision Technologies, Inc.*,
    2008 WL 123936, *4 (N.D. Cal. Jan. 9, 2008) ........................................ 13

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948, 954 (7th Cir. 2006) ............................................................ 5

*National Rural Telecom. Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523, 528 (C.D. Cal. 2004) ........................................... 9, 13, 14

*Officers for Justice v. Civil Service Comm'n of the
City and County of San Francisco*,
    688 F.2d 615, 625 (9th Cir. 1982) .................................................... 8, 9, 10

*Staton v. Boeing Co.,*
    (9th Cir. 2003) 327 F.3d 938, 952 ............................................................. 7

*Weiss v. Mercedes-Benz*,
    899 F.Supp.1297, 1300-01 (D.N.J. 1995),
    *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995) ........................................... 9

MISCELLANEOUS

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (2002) ............. 9

Credit Card and Debit Card Receipt Clarification Act of 2007 ............................ 12-14

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Fed. R. Civ. P. 16(a)(5) .................................................... 8

Fed. R. Civ. P. 23(e) ............................................... 9, 10, 13

Manual for Complex Litigation (Third) § 30.42 (1995) ........................ 9

Manual for Complex Litigation s 1.46, at 53-55 (West 1977) ................. 7

---
**MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**-1-**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

On August 11, 2008, the Court granted preliminary approval to the class action settlement (the "Settlement") reached between Plaintiffs Patrick J. McGee and Amber Tolley-McNerney ("Plaintiffs")[1] and Defendant Ross Stores, Inc. ("Ross" or "Defendant").  Pursuant to the preliminary approval order, class members were given notice that the Court would hold a fairness hearing on January 9, 2009.  Plaintiffs now move for final approval of the Settlement, which is not only fair, reasonable and adequate but an exceptional result for the Class, given the difficult issues and the retroactive "clarification" of the law which was looming when the parties settled and which subsequently became law and therefore would have eliminated class members' claims altogether but for the common fund settlement secured by Plaintiffs and their counsel.

Not a single class member has objected to (or opted out of) the Settlement, which will result in ***cash payments of more than $350*** to class members who elect to submit claims against the $1.25 million common fund.  There would be no valid basis to object, given the excellent result for class members who suffered no monetary loss as a result of Defendant's allegedly willful violation of their rights under FACTA, which is part of the Fair Credit Reporting Act.   Indeed, class members who simply take the step of submitting a claim, which requires no documentation, *will receive more money by virtue of this Settlement than they would have received had they prevailed at trial* (and after the inevitable appeals).

Final approval of the Settlement should be granted, as further shown below.


## II.  BACKGROUND OF THE LITIGATION AND SETTLEMENT

### A.  Plaintiffs' Claims and the Parties' Pre-Settlement Litigation

FACTA prohibits any retailer that accepts credit and/or debit cards (collectively "credit cards") from printing more than five digits of a cardholder's card or its expiration date upon any receipt provided to the cardholder at the point of sale or transaction.  15 U.S.C. § 1681 (c)(g).  FACTA was

---

[1] Mr. McGee is the plaintiff in Case No. C 06-007496 CRB.   Ms. Tolley-McNerney is the plaintiff in Case No. C 07-04503 CRB.  The cases are consolidated.

passed in 2003, but did not take effect until December 4, 2006 for point of sale ("POS") terminals that were in operation before January 1, 2005. In their complaints, filed on December 6, 2006 and February 27, 2007, respectively, Plaintiffs did not allege that they or the class members who received receipts that violated FACTA suffered actual damages, and their counsel are unaware of anyone who did. Instead, Plaintiffs sought statutory damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681n based on allegedly willful (i.e., intentional or reckless) violations of FACTA's pro-consumer requirements.

The parties vigorously litigated the case. Ross raised significant and substantial defenses to class certification (accepted by most courts in this Circuit), liability (claiming its conduct was inadvertent and not willful) and damages (claiming an award of statutory damages would violate due process). Plaintiff McGee and several Ross witnesses were deposed, and Ross produced voluminous documents, which counsel reviewed. [Declaration of J. Mark Moore ("Moore Decl."), ¶ 9.

While opposing class certification in Plaintiff McGee's case in this District, Ross successfully moved to transfer Plaintiff Tolley-McNerney's case from the U.S. District Court of Nevada. Notwithstanding Ross' aggressive defense of Plaintiff McGee's motion for class certification, this Court granted his motion and certified a single-store class of Ross customers. (Dkt. No. 83.) Upon the parties' stipulation, the Court consolidated the two cases for liability purposes.

Ross then moved for summary judgment. (Dkt. No. 108.) While its motion for summary judgment was pending, Class Counsel deposed several of Ross's key witnesses and prepared to file opposition to Ross's motion. Defendant then agreed to mediate. Moore Decl., ¶ 9.

B. **Settlement Is Reached**

The mediation occurred on May 8, 2008, while Ross's summary judgment motion was pending. The parties' counsel agreed to the terms of the Settlement after a day-long mediation session in San Francisco, California before the Honorable Charles A. Legge, United States District Court Judge (Ret.). The mediation involved extensive, arm's-length negotiations; numerous offers and counteroffers were exchanged before the final settlement terms were achieved. The issue of attorneys fees and costs, and proposed service awards to the two class representative plaintiffs, was not discussed until the benefits to the class were agreed upon. Negotiations regarding, and the drafting and editing of, formal

settlement and notice documents continued until a formal Stipulation of Settlement was executed on or about July 24, 2008. *Id.*, ¶¶ 9-10, Exh. 1.

### C. Summary of Settlement Terms

The settlement class is defined as follows:

> "All consumers who received electronically printed credit card receipts from Defendant between January 1, 2005, and February 22, 2007, wherein the receipt displayed (1) more than the last five digits of the person's credit card number, and/or (2) displayed the expiration date of the person's credit card."

In the first settlement of its kind involving FACTA (Moore Decl. at ¶ 8), each class member who submits a valid claim will receive *cash*, in the form of a check. Specifically, Ross has agreed to establish a settlement "common" fund in the amount of $1,250,000.00 ("Settlement Fund"). *No money from the Settlement Fund will revert to Ross*. After deducting Plaintiffs' counsel's attorneys' fees and costs, enhancement awards for Plaintiffs, and the settlement administrator's fees and costs from the Settlement Fund, all as approved by the Court, the resulting balance will be distributed to class members who submit claim forms.

Class members will receive a pro rata share of the Settlement Fund in the form of a check, and will have one hundred and twenty (120) calendar days to negotiate or deposit the check. At present, it appears virtually certain that class members making claims will receive more than $350 in cash – more than they would have recovered even had they prevailed in a class action trial and on appeal (and setting aside the Clarification Act's passage). Moore Decl., ¶ 17. Indeed, given the due process arguments that could have led to a reduction of any massive statutory damages award to persons who suffered no economic loss, class members likely would have been awarded less than $100 each even had they ultimately prevailed on their willfulness claims. See, e.g., *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (recognizing potential for reducing statutory damages award on due process grounds).

If, after expiration of the 120-day period, certain checks are not cashed, such monies will be donated to the Boys & Girls Clubs of America, a charitable 501c(3) organization, and potentially (in the event the uncashed checks exceed $2,000 in aggregate) also to the American Cancer Society and the Identity Theft Resource Center, a non-profit entity focused on the problem of identity theft. See

1  Moore Decl., Exh. 1 at ¶¶19-23.

2      In addition, Ross agreed that it will not oppose a request by Plaintiffs' counsel for an award of attorneys' fees up to $400,000, to an award of expenses and costs up to $50,000, and to enhancement awards to the two class representatives of up to $5,000 each. Moore Decl., Exh. 1 at ¶¶ 26-27.

    Ross will also pay all the administrative costs of settlement, including the costs of giving notice and costs of settlement administration incurred by the third-party claims administrator, from the Settlement Fund. Moore Decl., Exh. 1 at ¶¶ 21-22.

    As the Court previously recognized in approving the parties' notice plan, either Plaintiffs nor Ross know or can readily determine the identity or mailing address of absent class members. The parties therefore agreed that notice would be given in the following ways: 1) publication in USA Today, a newspaper with national publication; 2) notices displayed conspicuously at Ross stores; and 3) notice on a dedicated website at www.RossSettlement.com, which will also contain other relevant documents such as a claim form and an opt-out form. Moore Decl., Exh. 1 at ¶ 25.

    Ross also agreed to enter into a consent decree to ensure that in the future it complies with applicable FACTA truncation requirements. Moore Decl., Exh. 1, ¶ 24.

    Finally, and critically, Class Counsel secured Ross's agreement in the Settlement reached on May 8, 2008 to forego any advantage it might derive from the future potential passage of H.R. 4008, which was signed into law as the Clarification Act on June 3, 2008. Moore Decl., Exh. 1 at ¶ 24. But for that agreement, Ross would have been relieved of any potential liability for statutory damages and the Class would have received nothing, regardless of the strength of their claims.

    **D.    Preliminary Approval, Notice, Objections and Claims**

    On or about August 11, 2008, the Court granted preliminary approval. Notice to the class was provided as required by the Settlement and the Court's preliminary approval order. Moore Decl., ¶¶ 8, 17, Exh. 2, Yedalian Decl., ¶ 6; Ken Jew Decl., ¶ 3. To date, 1,490 claims have been submitted. [Moore Decl., ¶ 17. The claims period ends on January 2, 2009, per the notice to the class. No class member has objected to any aspect of the settlement nor have their been any requests for exclusion. *Id*., ¶ 8; Jacqueline Hitomi Decl., ¶ 8.

**III.     THE SETTLEMENT MERITS FINAL APPROVAL**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.* 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply with particular force in a case such as this where an allegedly illegal practice affected tens of thousands of consumers.

Rule 23(e)(C)(1) provides that a court may approve a settlement of a class action only when it finds after a hearing that the settlement is "fair, reasonable, and adequate," and Rule 23(e)(C)(4) provides that any class member may object to a proposed settlement. Judicial review of a class action settlement thus entails a two step process. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee* (6th Cir. 1980) 616 F.2d 305, 314 [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. (Emphasis added.)

At the second stage of the approval process, after class members have had a chance to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong,* 616 F.2d at 314.  This case is now at the second stage.  No class members have objected to the Settlement, and Plaintiffs now seeks final approval.

In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the district court must assess whether a class exists." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 952. In other words, the court must determine that the lawsuit qualifies as a class action under Rule 23 to begin with. *See, e.g., Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1022 (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). This Court has done that already.

Second, a reviewing court must determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952.

**A.        The Court Has Already Found that Plaintiffs's Claims Merit Class Certification For Settlement Purposes**

In granting Plaintiffs' Motion for Class Certification, as well as Plaintiffs' subsequent motion for preliminary approval, this Court found that class certification is appropriate. November 30, 2007, Civil Minutes Granting Class Certification (Docket No. 83); August 11, 2008 Order. Nothing has changed since then, except that Plaintiffs can now report that no class members have objected that certification is improper or that any other aspect of the Settlement is inappropriate. [Moore Decl., ¶ 8.] Therefore, Plaintiffs do not restate the arguments for class certification that were asserted in the Motion for Class Certification and the Motion for Preliminary Approval, but rather rely on their previous briefing as well as this Court's findings.

**B.        Strong Judicial Policy Favors Preliminary Approval Here**

There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit has specifically stated that, "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation...." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). This policy is reflected in the Federal Rules of Civil Procedure and the Local Rules of this court, which encourage facilitating the settlement of cases. See Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means).

When a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314, n.l6 (3d Cir. 1993). One court articulated the rationale for the policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in

complex commercial litigation *Weiss v. Mercedes-Benz*, 899 F.Supp.1297, 1300-01 (D.N.J. 1995), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995).

The proposed settlement in this case enjoys a presumption of fairness because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.), *cert. denied,* 516 U.S. 824 (1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length….(3) the proponents of the settlement are experienced in similar litigation. . . ."); *see also* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (2002); Manual for Complex Litigation (Third) § 30.42 (1995).

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *National Rural Telecom. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted). This is because parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id*. (citation omitted). "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Id*. (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). *See also Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (a court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery).

### C. The Settlement is Fair, Reasonable and Adequate

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at

959.

Thus, in determining whether a proposed settlement is fundamentally fair, adequate and reasonable, a court may consider any or all of the following factors, if applicable: the strength of the Plaintiffss' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the settlement. *Officers for Justice*, 688 F.2d at 625. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.*

Given the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id*. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

Here, approval is plainly warranted when the Court considers the factors the Ninth Circuit has laid out for guidance in the Rule 23(e) determination.

First, in terms of the strength of Plaintiff's case, proving willfulness was certainly not going to be an easy task at trial, assuming Plaintiffs would have defeated Defendant's pending summary judgment motion. Moreover, as previously discussed, H.R. 4008 has now become law, effectively foreclosing any chance of monetary recovery by Plaintiffs and the class, if not for Defendant's agreement as part of the Settlement to waive any advantages arising out of H.R. 4008. Barring a successful challenge to its retroactive application, the class would have recovered nothing, regardless whether Plaintiffs could prove willfulness based on the evidence. Plaintiffs' entry into the instant settlement, which included Ross's agreement to waive any right to rely on the Clarification Act, was an

excellent result for the class. The settlement before the Court not only avoids the risks inherent in seeking to prove willful conduct and to obtain a class-wide award of statutory damages over due process objections, but it also prevents Ross from seeking dismissal of Plaintiffs's claims based simply on the Clarification Act.

The parties reached a non-collusive, arms-length settlement, with the assistance of a respected federal judge, after exhaustive discovery and extensive litigation. Moreover, while Ross did not dispute that it in fact printed prohibited information on customer receipts, Ross strongly denied liability for statutory damages, and relied on other courts' denials of class certification in identical cases in opposing certification. No binding precedent was available, given FACTA's effective date of December 4, 2006, and any district court authorities that were available were largely the result of counsel's efforts in other cases. Moore Decl., ¶ 4, 22.

The parties therefore faced novel issues concerning the interpretation of FACTA and the requirements for a "willful" violation of FACTA. Continued litigation of this lawsuit presented Plaintiffs with substantial legal risks; indeed, given Congress' consideration and subsequent enactment of the Clarification Act, the Settlement saved the Class from having its claims eviscerated. Instead of losing their claims entirely (by the Clarification Act or, absent its passage, possibly by summary judgment or at trial), as did plaintiffs and putative class members in scores of cases pending at the time H.R. 4008 was signed into law,[2] the Settlement provides claimants with *cash*.

The looming statutory "clarification" presented risks above and beyond the "usual" (and in this case substantial) risks of proving liability and defeating any appeals relating to liability, damages or class certification. It is an excellent result for class members who suffered no actual monetary loss as a result of Defendant's illegal conduct. Without Class Counsel's diligent and skilled efforts, the Class would have been left with *nothing*, regardless whether Plaintiffs could have survived Defendant's

---

[2] Most pending FACTA cases were simply dismissed, or settled for a waiver of costs, after Congress's "clarification" became law in June 2008. Class Counsel, in contrast, were able to secure a class settlement providing cash benefits to class members in this case. But for this Settlement, the Clarification Act would have left class members with nothing.
.

summary judgment motion (that was pending when the case settled), prevailed at trial, secured a class award of statutory damages, and kept that award through inevitable appeals.  Moore Decl., ¶¶ 18-21.

Class Counsel also recognized that claims rates in consumer cases are generally low, particularly in cases where, as here, individual notice is impossible.  Given the number of class members (likely in the millions, even assuming repeat business by some class members, in view of the nearly 10 million receipts at issue) and the likely low claims rate, Class Counsel in this case negotiated a settlement which would ensure that class members who took the simple step of submitting a claim form would receive significant cash benefits, rather than, for example, vouchers or "discount-from purchase" certificates utilized in other (approved) FACTA settlements.[3]  And, in fact, the number of claims submitted in this case far exceeds those in other FACTA settlements that were obtained before the Clarification Act became law. [Moore Decl., ¶¶ 5, 6, 17.]

Beyond being superior to every other FACTA settlement of which counsel is aware, in terms of the cash relief afforded, the Settlement negotiated by Class Counsel will provide claimants with more relief, in cash, than they could have recovered at trial.  [Moore Decl., ¶ 17.]  As this Court undoubtedly knows given its experience handling class actions, such a result is virtually unheard of. *See, e.g., In re Heritage Bond Litigation*, 2005 WL 1594403, *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2%-3% of possible damages).

And class members who have chosen to participate can hardly have expected to receive *more cash than they might have recovered if they prevailed on every issue* at trial and on appeal.  Moore Decl., ¶ 7, 17.  Indeed, they will receive at least **$350** each. Id., ¶ 17.

In addition to the cash made available to the Class, Plaintiff's lawsuit resulted in Ross stopping its illegal conduct.  The Clarification Act allows consumers to seek statutory damages for willful violations, even consisting of printing solely customers' card expiration dates on receipts, that occur after the date of the Act.  Thus, while Congress's "clarification" gave FACTA defendants a "get-out-of-

---

[3]In other FACTA settlements approved in this Circuit and elsewhere, class members were eligible to receive menu items worth "up to $4.38" or $4.00 "discount from purchase" certificates.  Even in the *best* settlements from the perspective of the class members (which were negotiated by Class Counsel), claimants received non-cash relief – namely, vouchers entitling them to free products and/or services – valued at $15, or $30. Moore Decl., ¶¶ 5, 20.

1  jail-free card" for past violations, Congress still views willful violations of FACTA, in the future, as
2  worthy of statutory damages. This lawsuit ensures Ross will not continue to violate the law, willfully,
3  inadvertently or otherwise. Such nonmonetary benefits are properly considered in judging the results.
4  *See, e.g., Craft v. County of San Bernardino*, 2008 WL 916965, *8 (C.D. Cal. 2008) (noting that in
5  addition to monetary aspects, the defendant stopped the practices at issue).

6  The other factors the Ninth Circuit has laid out for guidance in the Rule 23(e) determination
7  militate in favor of final approval. First, in terms of the strength of Plaintiffs's case, it is unclear
8  whether Plaintiffs would have been able to prove their willfulness case on the merits (setting aside the
9  impact of the Clarification Act on the merits), had they survived Defendant's summary judgment
10 motion, which was pending when the settlement was reached. Assuming Plaintiffs would have
11 successfully opposed such Motion, the outcome of trial is always uncertain, and there would likely
12 have been additional appeals after any verdict on the merits. If, for example, Ross "were to appeal a
13 jury verdict in favor of Plaintiffs, it could be years before Plaintiffs would see a dollar." *In re
14 Omnivision Technologies, Inc*., 2008 WL 123936, *4 (N.D. Cal. Jan. 9, 2008).

15 Significant discovery and investigation also informed counsel's opinions and decision to seek
16 approval of the settlement. [Moore Decl., ¶ 9.] *See, e.g., In re Omnivision*, supra at *5; *National
17 Rural Telecomm. Cooperative*, 221 F.R.D. at 527-28 ("[a] settlement following sufficient discovery and
18 genuine arms-length negotiation is presumed fair"). Class Counsel was sufficiently informed about the
19 facts, issues and the relevant legal authorities (which were sparse but for the most part created by
20 counsel's own efforts in other FACTA cases) to engage in reasonable settlement discussions.

21 The views of Class Counsel also weigh in favor of the Settlement. As shown by their
22 declarations submitted herewith, counsel are experienced in litigating class actions and this very type of
23 class action. Class Counsel and the class representative believe the Settlement should be approved as
24 fair, reasonable and adequate, particularly now that H.R. 4008 would otherwise likely wipe out any
25 possibility of recovery for the class. "There is nothing to counter the presumption that Lead Counsel's
26 recommendation is reasonable. Therefore, the recommendation of counsel also weighs in favor of
27 approving the Settlement." *In re Omnivision*, at *6.
28 Finally, the reaction of the class is a relevant consideration. Here, as discussed above, no class

1  members have objected to the settlement, nor have any opted out.  Moore Decl., ¶ 8.  "It is established
2  that the absence of a large number of objections to a proposed class action settlement raises a strong
3  presumption that the terms of a proposed class settlement action are favorable to the class members."
4  *Nat'l Rural Telecomm. Coop*., 221 F.R.D. at 529; *see also In re Omnivision, supra* at *6.  "The absence
5  of a single objection to the Proposed Settlement provides further support for final approval . . . ." *Nat'l*
6  *Rural Telecomm. Coop.*, 221 F.R.D. at 529.

7  For all of the reasons discussed above, the arms-length settlement reached by the Parties in
8  this case, after extensive litigation, is unquestionably fair, reasonable and adequate, as this Court
9  preliminarily agreed in granting preliminary approval.  The Settlement provides significant cash to
10 class members who choose to submit claims which exceeds the amount they could reasonably have
11 recovered at trial, and eliminates the risks and expense of further litigation, including the risk that the
12 Clarification Act, by itself, would be applied to leave class members with nothing.  Under all the
13 circumstances, the settlement here is unquestionably reasonable and fair to class members who, after
14 all, likely suffered no economic harm as a result of Defendant's violations of the law.  See Moore Decl.
15 at ¶ 18.  Final approval under Rule 23(e) should be granted.

## IV. CONCLUSION

The proposed class action Settlement is fair, adequate, and reasonable.  It will result in substantial benefits to Settlement Class members, that they would otherwise not receive even if they prevailed at trial, and also would not receive in light of the change in law.  It is non-collusive, and it was achieved as the result of informed, extensive, and arms' length negotiations conducted by experienced counsel.  For all of the foregoing reasons, Plaintiffs respectfully requests final approval of the parties' Settlement, and that the Court enter the proposed order being filed concurrently herewith.

Dated: December 12, 2008

SPIRO MOSS BARNESS LLP
THE LINDE LAW FIRM
KELLER GROVER, LLP

By:         /s/    J. Mark Moore
              J. Mark Moore

---

**MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**-14-**